CASTET v. GAMBINO

———

(November 18, 1929. Opinion and Decree.)
(December 16, 1929. Rehearing Refused.)
(February 2, 1930. Writ of Certiorari and Review Denied by Supreme Court.)

———

Frank A. Miller and Solomon S. Goldman, of New Orleans, attorneys for plaintiff, appellant.

Warren V. Miller, of New Orleans, attorney for defendant, appellee.

HIGGINS, J. This is a suit by a widow, as the mother in behalf of her minor son, aged 17 years, for compensation for the loss of all of the fingers of his right hand while in the employ of the defendant on August 21, 1928, at about four o'clock A.M. The defendant admitted the employment, the amount of wages and the accident, but denied liability on the following grounds:

First, that the accident did not arise in the course of the minor's employment, averring "the minor was playing with the meat grinding machine when injured," and

Second, that the minor had used his hands instead of a wooden pestle, or mallet, provided by the defendant for forcing the meat into the blades of the meat grinder, and that this was an adequate guard or protection against the accident, and that the minor deliberately failed to use it.

There was judgment in favor of defendant dismissing plaintiff's suit and plaintiff has appealed.

The conclusion which we have reached

on the facts in the case makes it unnecessary to decide whether or not the wooden pestle or mallet was an adequate guard or protection against the accident within the meaning of the compensation law.

The evidence is conclusive that the accident arose out of the minor's employment with the defendant, so that the first defense of defendant falls. We might say that this defense was not even urged in the argument at bar.

The serious issue of fact involved is whether or not a wooden pestle or mallet was furnished by defendant to plaintiff's minor son as an adequate guard or protection against the accident. Plaintiff contends that such a guard was not furnished and defendant contends that it was.

Plaintiff proved a prima facie case and defendant then offered a number of witnesses to prove the allegation of its special plea that a pestle or wooden mallet was furnished as an adequate guard or protection against the accident. Under the law the defendant bore the burden of proving by a preponderance of the evidence this allegation in support of his special plea.

In paragraph 3 of defendant's answer it is averred that, at the time of the accident, "the minor was playing with the meat grinding machine," but the defendant, in his testimony, admits he had employed the boy for the purpose of running errands and also to operate the meat grinding machine in which his hand was injured; that at the time of the injury he had ordered the boy to grind meat; that time and again he had warned the boy to use the pestle or mallet in order to press down the meat in the machine, and the day before the accident "fired" the boy because he disobeyed instructions to use this pestle or mallet. In other words, he denies in his answer that the boy was employed for the purpose of operating the machine and avers that the boy was injured while playing with it; and yet, in his testimony, he absolutely contradicts the sworn allegations of his answer. Defendant has, therefore, discredited his own testimony.

Defendant produced two lady customers as witnesses, who testified that they knew that a pestle or mallet had been furnished by the defendant for use in connection with the operation of the meat grinding machine because they objected to the boy pressing down the meat in the machine with his hands, as this was unsanitary. But the record shows that the meat was placed in the receptacle of the grinding machine by the hands, and the pestle or mallet was used only to press it down to the knives of the machine. Their reason for remembering the pestle is therefore not impressive. Furthermore, these witnesses testify to what they saw on previous occasions, but neither of them was present at the time of the accident.

Defendant produced other witnesses who testified that, on previous occasions, they saw the pestle or mallet by the grinding machine, but they likewise were not present at the time of the injury. However, one witness produced by defendant, Frank Lecche, his nephew, testified that immediately after the boy was injured he rushed to the scene of the accident and noticed the pestle on the meat stand. This statement by him was purely voluntary and came before counsel had in any way questioned him about the pestle or mallet. This witness and most of the others produced by defendant work or have stands at the French Market, where defendant's stand is located, and are friends or relatives of the defendant. The majority of defendant's witnesses are Italians and

from their testimony it appears that they are uneducated, and yet we find the word "pestle," which is not a common word, was used by them throughout their testimony. This is singular to say the least.

The defendant also offered one Anthony Claverie, a young man who took the position of the injured boy, in the employment of defendant, just two hours after the accident. After testifying that the pestle was on the meat stand of the defendant when he arrived that morning, he testified on cross-examination as follows:

"Q. Who bought the new mallet for Philip Gambino?
"A. I did.
"Q. How soon was that after Rene got hurt?
"A. The same day.

       *    *    *    *    *    *    *

"A. I had orders to buy two new ones so I could give the old one to the lawyer.
"Q. How many mallets are there now?
"A. Two—one for his brother and one for him.
"Q. His brother is Charlie Gambino?
"A. Yes.
"Q. And you bought two of them right after Rene got hurt?
"A. Yes, sir."

The evidence shows that the meat stand of Charlie Gambino, a brother of defendant, was just five feet from the defendant's meat stand. The injured boy testified that the pestle or mallet produced in court was the property of Charlie Gambino and was used in connection with the meat grinding machine, but that defendant did not have any pestle or mallet which was, to be used in connection with defendant's machine. There can be no reason why the defendant purchased two mallets, other than that he replaced the mallet of his brother,

Charles Gambino, which was introduced in evidence, and kept one of the mallets for his own machine after the accident. The only persons present at the time of the accident were the boy and defendant. The question of whether or not a pestle or mallet was furnished depends largely on their testimony. As defendant has discredited his own testimony and his witnesses were not present at the time of the accident, we have reached the conclusion that the defendant has failed to prove by a preponderance of the evidence the allegations in support of his special plea, and plaintiff is entitled to recover.

It is admitted that, at the time the boy was injured, he was earning $18 per week. Sixty-five per cent of this figure amounts to $11.70. Under the compensation law he is entitled to compensation for eighty-four weeks. Defendant has paid six weeks' compensation to the injured boy without admitting his liability.

For the reasons herein assigned, it is ordered, adjudged and decreed that the judgment of the district court be and the same is hereby annulled, avoided and reversed, and that there now be judgment herein in favor of Mrs. Celina Castet, widow of Jean Marie Laporte, for the use and benefit of her minor son, Erene Laporte, plaintiff herein, and against the defendant, Philip Gambino, in the sum of $11.70 per week for eighty-four weeks, beginning August 21, 1928, with legal interest on each week's installment from date it became due until paid, subject to credit of

six weekly payments made by defendant. Defendant to pay all costs of these proceedings.

## ON APPLICATION FOR REHEARING

HIGGINS, J. Both appellant and appellee have applied for a rehearing in this case. We find no merit in appellee's application.

The appellant, in his petition for rehearing, has called our attention to the fact that the correct name of the plaintiff's minor son is "Rene" Laporte instead of "Erene Laporte," as erroneously stated in plaintiff's petition.

Our attention has also been called to an error in our decree in this case in that we allowed eighty-four weeks instead of ninety weeks compensation to plaintiff.

These errors can be corrected by amendment.

It is therefore ordered that our former decree be amended so as to read as follows:

It is ordered, adjudged and decreed that the judgment of the district court be and the same is hereby annulled, avoided and reversed, and that there now be judgment herein in favor of Mrs. Celina Castet, widow of Jean Marie Laporte, for the use and benefit of her minor son, Rene Laporte, plaintiff herein, and against the defendant, Philip Gambino, in the sum of $11.70 per week for eighty-four weeks, beginning October 1, 1928, with legal interest on each week's installment from the date it became due until paid, defendant and appellee to pay all costs of these proceedings.